WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lezley Marisol Pineda,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Carolyn W Colvin,<br><br>　　　　　　Defendant. | No. CV-13-01128-PHX-DGC<br><br>**ORDER** |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Lezley Marisol Pineda seeks judicial review of the Commissioner's decision finding her not disabled within the meaning of the Social Security Act. Doc. 18. For the reasons that follow, the Court will remand this case for further proceedings.

**I.　Background.**

Plaintiff applied for disability insurance benefits and supplemental security income on February 2010, alleging disability beginning in January 2010.[1] Doc. 19 at 2. After a hearing on July 19, 2011, an administrative law judge ("ALJ") issued an opinion on August 11, 2011 finding Plaintiff not disabled. *Id.* at 2; A.R. 24. A request for review was denied by the Appeals Council and the ALJ's opinion became the Commissioner's final decision. Doc. 19 at 2.

---

[1] Plaintiff originally alleged disability beginning in March 2009, but amended her disability onset date to January 2010 during her administrative hearing. Doc. 19 at 2.

## II. Legal Standard.

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). If there is sufficient evidence to support the Commissioner's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

Determining whether a claimant is disabled involves a sequential five-step evaluation. The claimant must show (1) he is not currently engaged in substantial gainful employment, (2) he has a severe physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") precludes him from performing his past work. If at any step the Commissioner determines that a claimant is or is not disabled, the analysis ends; otherwise it proceeds to step five. If the claimant establishes his burden through step four, the Commissioner bears the burden at step five of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).

## III. Analysis.

Plaintiff advances three arguments as to why the ALJ's decision was erroneous. First, she argues that the ALJ erred by rejecting or ignoring assessments from a doctor and a nurse practitioner who treated Plaintiff. Doc. 18 at 1. Next, Plaintiff contends that the ALJ erred by rejecting her symptom testimony without providing clear and convincing reasons supported by substantial evidence. *Id.* Finally, she argues that the ALJ erred by relying on "the medical-vocational guidelines of Appendix 2 of the

disability regulations" in determining that Plaintiff was not disabled. *Id.* at 2. The Court will consider each argument in turn.

### A. Treating Source Opinions.

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinion of a non-treating physician. *Id.* A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). The controverted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995)). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

Nurse Practitioners are not an "acceptable medical source" for documenting a medical impairment under 20 C.F.R. § 404.1513(a). Rather, they are considered "other sources" that the Commissioner may use to show the severity of a claimant's impairments and how these impairments may affect his ability to work. 20 C.F.R. § 404.1513(d). "The ALJ may discount testimony from these 'other sources' if the ALJ gives reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal quotation marks and citations omitted).

As to Nurse Practitioner Letellier's assessment, Plaintiff asserts that the ALJ "impermissibly engaged in a selective analysis of that evidence without offering

1  justification for doing so." Doc. 18 at 19.  The ALJ was required to provide "germane"
2  reasons for discounting the testimony of NP Letellier.  *See Molina*, 674 F.3d at 1111.
3  The ALJ noted that full weight was not given to NP Letellier's opinion "because her
4  estimation that the claimant has moderately severe mental limitations is inconsistent with
5  the substantial evidence described above." A.R. 33.  The evidence referred to by the ALJ
6  was "the mental opinions of the psychological consultative examiner, the State agency
7  medical consultant on reconsideration, and [NP Letellier]," which the ALJ found were
8  "generally consistent in that they all assess the claimant is able to perform a range of
9  work that is limited to simple repetitive tasks." *Id.*  The ALJ further noted that "the
10 conservative course of care for the claimant's mental impairment" and "the claimant's
11 improved status and the report that she was 'doing well on a very low dose' of
12 medication" supported his assessment of the evidence. *Id.*  Although Plaintiff argues that
13 "logically the same standard that applies to treating physicians assessments should apply
14 to treating nurse practitioner assessments," (*id.* at 17), this is not the standard applied by
15 the Ninth Circuit. 20 C.F.R. § 404.1513(a).  The Court will not depart from established
16 law.  The ALJ provided "germane" reasons for discounting portions of NP Letellier's
17 opinion, and the Court accordingly finds no legal error.
18      With regard to Dr. Varns's opinion, Plaintiff argues that "the ALJ failed to even
19 acknowledge Dr. Varns's assessment of the effect that pain would have on [Plaintiff]'s
20 ability to function: there would be frequent interference with attention and concentration,
21 leading to frequent failure to complete tasks in a timely manner." Doc. 18 at 18.  The
22 report she cites as ignored by the ALJ is the same report to which the ALJ stated he gave
23 "significant weight." *See id.* (citing A.R. 590-91); A.R. 32 (citing A.R. 587-91).
24 Although the ALJ stated that he gave "significant" and "controlling" weight to Dr.
25 Varns's opinion (A.R. 32-33), he does not appear to have explicitly discussed the final
26 two pages of the opinion wherein Dr. Varns opines that Plaintiff experiences pain that is
27 "moderately severe," that her pain would "frequently" interfere with attention and
28 concentration, and that she would "frequently" experience deficiencies of concentration,

persistence, or pace. A.R. 590-591. The ALJ concluded that Dr. Varns's opinion "found that [Plaintiff] could perform a broad range of work at the light exertional level." A.R. 32. The definition of light work contained in 20 C.F.R. § 404.1567(b), however, makes no mention of pain limitations such as those established by Dr. Varns's opinion.

Plaintiff correctly notes that an ALJ may not avoid his obligation to provide specific and legitimate reasons for rejecting a treating physician's opinion by simply ignoring the opinion. Doc. 18 at 18 (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007)). It is difficult to determine whether the ALJ actually considered the final two pages of Dr. Varns's report in his determination that the opinion should be afforded significant and controlling weight. The Court, however, need not decide the issue because it concludes, in any event, that a remand is required to consult a vocational expert.

### B.     Plaintiff's Subjective Testimony.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. A.R. 29. The ALJ then found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they were inconsistent with his RFC assessment. *Id.* The ALJ gave specific, clear, and convincing reasons for finding Plaintiff's testimony not credible. The ALJ found that Plaintiff's "activities of daily living are inconsistent with the claimant's testimony regarding disability and demonstrate the capacity for work." *Id.* He noted that Plaintiff "performed personal care tasks, prepared simple meals, cleaned,

shopped, and watched television." *Id.* He further noted that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." *Id.* at 29-30. The ALJ also stated that he discounted Plaintiff's credibility because "her part-time work after the amended onset date is inconsistent with her allegation of disability," and that medical records showed that Plaintiff "was working part-time as a leasing assistant on June 14, 2011." *Id.* at 30.

The ALJ further noted that there was "no evidence of hospitalizations, physical therapy, pain clinic treatment, surgery, or other, similar treatment for [Plaintiff]'s alleged pain." *Id.* In addition, the ALJ found that: (1) Plaintiff had failed to follow through on prescribed treatment, (2) "Dr. Zoltan reported that [her] left knee was stable and had full range of motion, (3) the findings of a September 21, 2010 x-ray were benign, (4) Plaintiff "received routine and conservative treatment for complaints of knee pain and mood disorder," (5) a January 3, 2011 exam showed that Plaintiff's knee was "stable, and had full range of motion," (6) a May 2010 mental status examination showed that Plaintiff was "in a stable mental state," and (7) recent treatment records from Phoenix Interfaith Counseling "continued to reaffirm [Plaintiff]'s stable mental status." *Id.* at 30-32. The ALJ's reasons for rejecting Plaintiff's subjective testimony are sufficient to meet the standard required by the Ninth Circuit. *See Vasquez*, 572 F.3d at 591.

### C. Use of Medical-Vocational Guidelines.

"At step five, the ALJ can call upon a vocational expert to testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). But an ALJ must not always utilize a vocational expert. In some cases, the ALJ may rely on Medical-Vocational guidelines, or "grids," which are "a matrix system for handling claims that involve substantially uniform levels of impairment." *Id.* at 1101 (citing 20 C.F.R. pt. 404, subpt. P, app. 2). "The Guidelines present, in *table form*, a short-hand method for determining the availability and numbers

of suitable jobs for a claimant." *Id.* (emphasis in original). "The Commissioner's need for efficiency justifies use of the grids at step five where they *completely and accurately represent a claimant's limitation.*" *Tackett*, 180 F.3d at 1101 (emphasis in original). This means that a claimant "must be able to perform the *full range* of jobs in a given category, i.e., sedentary work, light work, or medium work." *Id.* (emphasis in original). The *Tackett* court noted that "significant non-exertional impairments . . . may make reliance on the [Guidelines] inappropriate," and that "pain can be a non-exertional limitation." *Id.* at 1101-02 (citing *Derosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988)).

Plaintiff argues that the ALJ's "reliance on the grids was inappropriate because [she] suffered non-exertional impairments sufficiently severe as to impact the ability to work." Doc. 18 at 34. The ALJ found that Plaintiff's "limitation to unskilled work has little or no effect on the occupational base of work at the light exertional level because the claimant is still capable of the basic mental work-related activities, namely understanding, carrying out, and remembering simple instructions; making judgments that are commensurate with the functions of unskilled work," such as "simple work-related decisions; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." A.R. at 35 (citing SSR 96-9p). As discussed above, the final two pages of Dr. Varns's report indicate that Plaintiff experiences pain that is "moderately severe," that her pain would "frequently" interfere with attention and concentration, and that she would "frequently" experience deficiencies of concentration, persistence, or pain. A.R. 590-591. These limitations could be described as "significant." The ALJ's conclusion that the Plaintiff's "additional limitations have little or no effect on the occupational base of unskilled light work" (A.R. 35) is at odds with Dr. Varns's report. Because it appears that the non-exertional limitations found by Dr. Varns could have impacted Plaintiff's ability to complete "basic mental work-related activities," and because the ALJ did not explain whether or why he disregarded this portion of the Varns report, the Court concludes it was not appropriate

for the ALJ to rely solely on the grids and a vocational consultant should have been consulted. *See Tackett*, 180 F.3d at 1101-02 ("[S]ignificant non-exertional impairments . . . may make reliance on the [Guidelines] inappropriate.").

### D.     Remand.

Having found legal error, the Court has the discretion to remand the case for further development of the record or for an award benefits. *See Reddick*, 157 F.3d at 728. In *Smolen v. Chater*, the Ninth Circuit held that evidence should be credited and an action remanded for an immediate award of benefits when the following three factors are satisfied:  (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.  80 F.3d 1273, 1292 (9th Cir. 1996).

Here, the ALJ clearly considered the opinion of Dr. Varns.  Because he failed to include any discussion of the pain related limitations established by Dr. Varns, it is unclear whether the ALJ properly considered that portion of the report.  However, even if the Court were to credit Dr. Varns's report as true, it is not clear from the record that the ALJ would be required to find the Plaintiff disabled.  The other portions of Dr. Varns's report indicated that Plaintiff was capable of light work, and the ALJ failed to consult a vocational expert to determine the effect that Dr. Varns's pain limitations would have on the occupational base.  Accordingly, the question of whether any jobs would be available to Plaintiff if Dr. Varns's opinion were credited as true remains unanswered.  The Court therefore cannot say that it is clear from the record that the ALJ would be required to find Plaintiff disabled were Dr. Varns's report credited and will remand this case for further proceedings.  On remand, the Defendant is directed to consider the effect of Dr. Varns's pain limitations on the occupational base of unskilled light work.

1   **IT IS ORDERED** that this case is **remanded** for further proceedings.  The Clerk
2   shall **enter judgment** accordingly and **terminate** this case.
3   Dated this 7th day of April, 2014.

_____
David G. Campbell
United States District Judge